Brau Ramírez, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
Se cuestiona, mediante los recursos consolidados de epígrafe, una resolución emitida el 15 de mayo de 2003 por la Junta de Planificación de Puerto Rico, que autorizó una consulta de ubicación presentada por la parte recurrida, Empresas Inabón, Inc. (“Empresas Inabón”) para el establecimiento de un centro comercial en una finca de 37.4 cuerdas ubicada en el Barrio Canas del Municipio de Ponce.
Mediante el recurso KLRA-2003-00428, las partes interventoras, Empresas Fonalledas, Inc. (“Empresas Fonalledas”), Plaza del Caribe, S.E. (“Plaza del Caribe”) y Plaza las Américas, Inc. (“Plaza Las Américas”), quienes son dueñas del centro comercial Plaza del Caribe, ubicado en la misma área de mercado del proyecto propuesto, impugnan la determinación de la Junta, alegando, entre otras cosas, que dicho organismo carecía de jurisdicción para actuar sobre la consulta.
Por su parte, en el recurso KLRA-2003-00430, el Centro Unido de Detallistas de Puerto Rico, Inc. (“Centro Unido”) ataca separadamente la decisión de la Junta.
Mediante resoluciones emitidas los días 3 y 11 de julio de 2003, concedimos término a la parte recurrida para expresar su posición en tomo a los recursos. La parte recurrida ha comparecido por escrito.
Procedemos, en esta etapa, a consolidar los recursos para fines de su adjudicación.
*608 Denegamos.
II
Según se desprende de los recursos presentados, Empresas Inabón es una corporación que hace negocios en el Estado Libre Asociado de Puerto Rico. El proyecto contemplado por dicha parte es para el establecimiento de un centro comercial en una finca ubicada al oeste de la Avenida Baramaya que conduce a la Carretera Estatal Número 2 en el Barrio Canas del Municipio de Ponce.
El proyecto objeto de la consulta tiene una cabida de 30.05 cuerdas. El mismo colinda por el Norte y por el Este con la Avenida Baramaya del Municipio de Ponce, por el Sur, con la urbanización Punto Oro y por el Oeste, con la urbanización La Matilde.
El proyecto consiste en un centro comercial compuesto por tres edificios principales y cuatro estructuras independientes con un pietaje de 324,323 pies cuadrados. De éstos, 169,895 pies cuadrados se dedicarán a área de venta al detal; 83,680 pies cuadrados se dedicarán a área de almacén y 48,698 pies cuadrados a oficinas de negocios y servicios.
El costo del proyecto es de $28,000,000.00. El mismo supuestamente habrá de generar 1,500 empleos en la fase de construcción y 1,100 empleos durante la operación del centro.
Los terrenos en los que ubicará el proyecto están comprendidos dentro de un Distrito clasificado como Suelo Urbanizable Programado (SUP) y calificado con un distrito sobrepuesto de Desarrollo Conceptual (DC), conforme al Plan de Ordenación Territorial de Ponce. Parte de los terrenos están ubicados en una zona 2 de inundabilidad, según los Mapas de Zonas Susceptibles a Inundaciones.
El proyecto fue inicialmente sometido, en o cerca de 2000, al Municipio de Ponce, por Empresas Inabón, representada por la firma de arquitectos Gutiérrez y Gutiérrez. La solicitud fue dirigida al Municipio de Ponce, toda vez que éste ha adquirido las competencias otorgadas por la Ley de Municipios Autónomos del Estado Libre Asociado de 1991, para la aprobación de consultas y proyectos dentro de su límite territorial. Véase, 21 L.P.R.A. secs. 4601-4627.
No obstante, el proyecto fue referido a la Junta de Planificación por el Municipio, ya que el Municipio consideró que se trataba de un proyecto privado de carácter regional, conforme a lo dispuesto por la sección 4.02 del Reglamento Adjudicativo de la Junta de Planificación, que identifica como proyecto regional comercial aquellos con un área entre 250,000 y 999,999 pies cuadrados. El Municipio entendió que, bajo lo dispuesto por el Art. 13.012 de la Ley de Municipios Autónomos, la facultad para considerar proyectos de esta magnitud correspondía a la Junta, 21 L.P.R.A. sec. 4610.
La Junta de Planificación acogió la solicitud de Empresas Inabón y dio trámite a la misma.
El 6 de abril de 2000, el Centro Unido compareció en oposición al proyecto. El 18 de abril de 2000, Empresas Fonalledas, Plaza del Caribe y Plaza Las Américas también comparecieron a oponerse. La Junta admitió la intervención de las partes recurrentes.
Luego de varios trámites, se señaló una vista pública para el 14 de marzo de 2001. Este señalamiento fue suspendido debido a que la notificación para la vista resultó defectuosa.
El 12 de abril de 2001, se publicó un nuevo aviso de vista pública. Aunque el mismo informaba correctamente sobre el proyecto, el anuncio expresaba que la consulta solicitada conllevaba el otorgamiento de variaciones, lo que no era exacto.
*609 El 17 de abril de 2001, Empresas Fonalledas, Plaza del Caribe y Plaza Las Américas solicitaron el archivo de la consulta, alegando que la misma había sido incorrectamente notificada, y que la propuesta resultaba inconsistente con la Ley de Política Pública Ambiental, porque estaba situada en un área inundable. La recurrida se opuso.
Posteriormente, las partes recurrentes mencionadas también solicitaron la desestimación de la consulta de ubicación, alegando que la Junta de Planificación carecía de jurisdicción para considerar la misma hasta tanto el Municipio de Ponce hubiera aprobado un Plan de Ensanche para el área. El Centro Unido también presentó una moción de desestimación. Empresas Inabón se opuso a las mociones presentadas por las recurrentes.
Mediante resolución emitida el 20 de agosto de 2001, la Junta denegó la desestimación de la consulta. Este dictamen fue recurrido ante este Tribunal, mediante el recurso KLRA-2001-00684, el cual se rehusó a revisar en ese momento la resolución de la Junta, concluyendo que la misma no constituia una adjudicación final.
La Junta procedió a la celebración de vistas públicas sobre el proyecto. Se presentó evidencia pericial sobre la viabilidad económica del propuesto Centro Comercial, consistente de un estudio preparado por la firma Estudios Técnicos, Inc. Dicho informe fue impugnado por el Centro Unido, quien presentó evidencia pericial aduciendo que el área de mercado para el proyecto estaba saturada.
Durante la vista, se trajo a la atención de la Junta la existencia de un problema de inundaciones en la Urbanización Hacienda La Matilde en Ponce. Para contestar dichos señalamientos, Empresas Inabón posteriormente sometió un informe hidrológico-hidráulico sobre el proyecto, exponiendo las medidas de mitigación propuestas por dicha parte.
Dicho informe, preparado por el Dr. Gregory Morris, expresaba que solamente un 10% de los terrenos objeto del proyecto se encontraban en área inundable, la cual era una Zona Inundable 2 y, por lo tanto, desarrollable. El informe expresaba que las aguas del Río Matilde, cercanas al proyecto, no habrían de afectar el predio de forma significativa, ya que la Avenida Baramaya, que corre a lo largo de la propiedad en este sector, es más alta, en la mayoría de sus puntos, que el nivel de inundación del río y constituye una barrera contra el flujo de las aguas hacia el predio. En aquellos puntos donde la citada Avenida no aparecía más alta que el nivel de inundación del río, el terreno del predio era más alto, por lo que las aguas de escorrentía tampoco entrarían al mismo.
La prueba pericial ofrecida por la recurrida tendía a reflejar que las aguas de escorrentía de la parcela se captarían en una depresión existente en el terreno, como sucede en la condición actual del predio, por lo que el proyecto no habría de tener efecto sobre el patrón de drenaje de la propiedad.
La parte recurrente se opuso a dicho informe y presentó evidencia pericial en contrario, la que fue contestada por la recurrida.
Luego de otros trámites, el 24 de marzo de 2003, Empresas Fonalledas, Plaza del Caribe y Plaza Las Américas solicitaron la desestimación de la consulta, alegando que la Ley 49 de 4 de enero de 2003 prohibía absolutamente a la Junta autorizar proyectos en áreas inundables. La recurrida se opuso.
El 15 de mayo de 2003, la Junta emitió la resolución recurrida, denegando las solicitudes de desestimación de las partes recurrentes y autorizando la consulta.
En su resolución, la Junta de Planificación observó que el área objeto de la consulta muestra “un comportamiento con marcada tendencia al desarrollo comercial y residenciar. La Junta observó que en el área existían varias urbanizaciones, entre éstas, Punto de Oro y Hacienda La Matilde y que el área circundante se *610 encontraba “muy influenciada comercialmente, dada la exposición directa a la vía principal, la Carretera Estatal Número 2. ”
La Junta señaló que el sector cuenta con todas las facilidades de infraestructura, tales como energía eléctrica, agua potable y alcantarillado sanitario. El acceso al proyecto sería a través de una calle marginal conectada con la Avenida Baramaya.
La Junta mencionó que el proyecto había sido evaluado por distintas agencias gubernamentales, las que habían presentado sus recomendaciones. El proyecto fue considerado por la Autoridad de Energía Eléctrica, la Autoridad de Acueductos y Alcantarillados, la Autoridad de Carreteras y Transportación, el Departamento de Recursos Naturales y Ambientales, el Instituto de Cultura Puertorriqueña, la Autoridad de Edificios Públicos, la Junta de Calidad Ambiental y la Autoridad Para el Manejo de Desperdicios Sólidos. Todas estas agencias dieron su aval al desarrollo, sujeto a que se cumpliera con los requisitos señalados por ellas.
Por su parte, el Municipio de Ponce también endosó el proyecto.
En cuanto al alegado problema de inundaciones, la Junta determinó que la urbanización aledaña al predio, Hacienda La Matilde, efectivamente había sufrido inundaciones severas en los últimos diez años, específicamente el 6 de enero de 1992 y el 18 de septiembre de 2000. La Junta, sin embargo, descartó que este problema hubiera de afectar el proyecto propuesto por la recurrida, observando que la referida urbanización estaba afectada por una Zona Inundable I, además de por una Zona Inundable II, mientras que el desarrollo propuesto sólo estaba afectado por una Zona II. La Junta señaló, además, que “la pane proponente detalló con prueba fehaciente qué medidas de mitigación adoptará para aminorar las inundaciones, tanto en su predio como en la Urbanización Hacienda La Matilde, incluyendo proveer nueva infraestructura en el sector. ”
A base de estas consideraciones, la Junta determinó declarar con lugar la consulta de ubicación.
La Junta denegó la moción de desestimación de Empresas Fonalledas, Plaza del Caribe y Plaza Las Américas, concluyendo que gozaba de jurisdicción sobre la consulta por tratarse de un proyecto de impacto regional, conforme al Art. 13.012 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4610.
La Junta Señaló que el proyecto cumplía con el Objetivo y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, el cual requiere que los proyectos comerciales se ubiquen en terrenos identificados y destinados para usos comerciales. La Junta observó que la clasificación de distrito DC-SUP adoptada por el Municipio de Ponce no identificaba terrenos para uso alguno, añadiendo que “[n]o se identifican los terrenos para uso comercial, pero tampoco se prohíben. ”
La Junta observó que el Municipio de Ponce había sometido una revisión a su Plan Territorial, aprobada por la Asamblea Municipal, en la cual los terrenos objeto de la consulta habían sido clasificados dentro de un Distrito de Ordenación EV.4. La agencia observó que “[djicho distrito tiene como propósito el fomentar el desarrollo residencial, comercial, de servicios, de industria liviana, en sectores que permiten una amplia variedad de usos con alta densidad, ” por lo que la Junta entendió que el proyecto cumplía con dicho distrito de ordenación en cuanto a uso y propósito.
La Junta rechazó la contención de las recurrentes, en tomo a que la aprobación del proyecto estaba prohibida por la Ley Núm. 49 del 4 de enero de 2003. La Junta observó que la citada Ley Núm. 49 había enmendado la Ley Orgánica del Departamento de Recursos Naturales y Ambientales, 3 secs. 155 y ss. (Supl. 2003), para transferir a dicha entidad el programa de Prevención de Inundaciones establecido mediante la Ley Núm. 6 de 29 de febrero de 1968, 12 L.P.R.A. secs. 255 y ss. Dicho precepto, sin embargo, no enmendó la Ley Para el Control de Edificaciones en Zonas Susceptibles de Inundaciones, 23 L.P.R.A. secs. 225 y ss. ni la Ley *611 Orgánica de la Junta de Planificación, 23 L.P.R.A. secs. 62 y ss., que faculta a la Junta a entender en proyectos en áreas inundables.
La Junta también concluyó que el aviso de la vista pública había sido adecuado, rechazando la contención de las recurrentes de que el mismo era defectuoso.
Insatisfechas con la determinación de la Junta, las partes recurrentes acudieron ante este Tribunal.
III
En su recurso, Empresas Fonalledas, Plaza del Caribe y Plaza Las Américas plantean que la Junta erró al asumir jurisdicción sobre la consulta, a pesar de que el Municipio de Ponce no había confeccionado un Plan de Ensanche que permitiera a la Junta evaluar el proyecto en cuestión y al autorizar la consulta, y no obstante la prohibición establecida en la Ley Núm. 49 de 4 de enero de 2003, que prohíbe la edificación de estructuras en zonas inundables, enmendando el Plan Territorial de Ponce. Las recurrentes plantean que la Junta erró al aquilatar la prueba desfilada relacionada a la inundabilidad del proyecto y al autorizar la consulta, a pesar de que el aviso de vista pública resultaba contrario al Art. 23 de la Ley Orgánica de la Junta, 23 L.P.R.A. sec. 62v, y la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2101 y ss.
Por su parte, el Centro Unido plantea que la Junta erró al aprobar la consulta, a pesar de que la evidencia presentada sugería que el área de mercado para la propuesta está saturada.
Nuestra facultad de revisión, en el campo administrativo, es limitada. Según ha establecido el Tribunal Supremo de Puerto Rico, las decisiones de los organismos administrativos gozan de deferencia por los tribunales y se presumen correctas. La revisión judicial de las mismas se circunscribe a determinar si la agencia en el caso particular actuó arbitraria, ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción. Rivera Concepción v. A.R.P.E., 152 D.P.R. _ (2000), 2000 J.T.S. 155, a la pág. 160; Mun. de San Juan v. J.C.A., 149 D.P.R. _ (1999), 99 J.T.S. 152, a la pág. 125; Franco v. Depto. de Educación, 148 D.P.R. 703, 709 (1999); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Si la interpretación de una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el tribunal debe abstenerse de intervenir con la misma. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. _ (1999), 2000 J.T.S. 11, a la pág. 489; Com. Seg. P.R. v. Antilles Ins. Co. 145 D.P.R. 226, 234 (1998); Rivera v. A & C Development Corp., 144 D.P.R. 450, 461 (1997).
La intervención judicial con las actuaciones administrativas, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. 3 L.P.R.A. sec. 2175; P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. _ (2000), 2000 J.T.S. 98, a la pág. 1,266; Mun. de San Juan v. J.C.A., 99 J.T.S. 152, a la pág. 125; Rivera v. A & C Development Corp., 144 D.P.R. a las págs. 460-461.
En el presente caso, los recurrentes se quejan de una decisión de la Junta de Planificación. Dicho organismo, como se conoce, es la agencia gubernamental encargada de guiar el desarrollo integral de Puerto Rico, debiendo llevar esto a cabo "de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de la población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para *612 que la sociedad pueda desarrollarse integralmente." 23 L.P.R.A. sec. 62c.
La Junta goza de facultad para adoptar planes de uso de terrenos, los que gobiernan el curso del desarrollo de nuestra jurisdicción. La Ley Orgánica de la Junta requiere, en este sentido, que “[t]oda obra o proyecto a ser realizado por cualquier persona o entidad deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terrenos, una vez adoptadas por la Junta de Planificación y aprobados ... ”. 23 L.P.R.A. sec. 62m.
No obstante, conforme a las facultades generales de la Junta, 23 L.P.R.A. sec. 62j, dicha agencia goza de poder para autorizar consultas de ubicación para propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable a áreas zonificadas o, en el caso de áreas no zonificadas, que pudiesen, por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, afectar el desarrollo de un sector. Mun. de San Juan v. Bosque Real, Inc., 158 D.P.R. _ (2003), 2003 J.T.S. 33, a la pág. 630; Ortiz v. Junta de Planificación de P.R., 152 D.P.R. _ (2000), 2000 J.T.S. 151, a la pág. 122; Asoc. Vec. H. San Jorge v. U. Med. Corp., 2000 J.T.S. 21, a la pág. 563.
El Tribunal Supremo de Puerto Rico ha reconocido que la Junta goza de gran discreción en este tipo de determinaciones, sujeto a las normas y requisitos consignados en la Ley. Mun. de San Juan v. Bosque Real, Inc., 2003 J.T.S. 33, a la pág. 630; Asoc. Vec. H. San Jorge v. U. Med. Corp., 2000 J.T.S. 21, a la pág. 563; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. a la pág. 85.
El procedimiento de consulta de ubicación ante la Junta es de naturaleza adjudicativa. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 128 (1998); Luán Investment Corp. v. Román, 125 D.P.R. 533, 547 (1990); López v. Junta de Planificación, 80 D.P.R. 646 (1958).
El Tribunal Supremo de Puerto Rico ha observado, específicamente, que en la revisión de una resolución de la Junta aprobando una consulta de ubicación, los tribunales deben respetar sus determinaciones y otorgar deferencia a su experiencia y juicio especializado, cuando ésta hubiera optado por una y no otra alternativa de la política pública que ella misma ha trazado. Misión Ind. P.R. v. J.P., 146 D.P.R. a las págs. 134-135.
En la situación de autos, la parte recurrente plantea que la Junta de Planificación carecía de jurisdicción para entender en la consulta de ubicación presentada por Empresas Inabón. La recurrente señala que, conforme las disposiciones de la Ley de Municipios Autónomos, al Municipio de Ponce le fue transferida la competencia para adoptar planes de ordenación territorial para los terrenos de dicho municipio, 21 L.P.R.A. secs. 4601 y ss., por lo que la Junta venía obligada a tomar en consideración dicho plan al adjudicar la consulta presentada por la parte recurrida.
En el caso de autos, los terrenos objeto del proyecto están clasificados dentro de un distrito de suelo urbanizable programado (SUP) y calificados con un distrito sobrepuesto de desarrollo conceptual (DC). Según la parte recurrente, para este tipo de suelo, la Ley de Municipios Autónomos exige la preparación de un Plan de Ensanche que establezca directrices específicas y un planeamiento detallado del desarrollo para el suelo urbanizable programado, 23 L.P.R.A. sec. 4604, lo que el Municipio de Ponce no ha realizado en cuanto a los terrenos en cuestión. La recurrente plantea que, en ausencia de un Plan de Ensanche, el terreno no puede ser desarrollado. No estamos de acuerdo.
Lo cierto es que no existe duda que el proyecto en cuestión es uno de impacto regional, conforme a la sección 4.02 del Reglamento Adjudicativo de la Junta de Planificación, por tener 324,323 pies cuadrados. El Art. 13.012 de la Ley de Municipios Autónomos reserva la facultad a la Junta para considerar “[pjroyectos privados de carácter o impacto regional, no incluidos en un Plan de Ordenación y que sean importantes para la salud, seguridad y bienestar de la región. ”21 L.P.R.A. sec. 4610.
*613 No cabe duda, en vista de dicha disposición, que la Junta de Planificación efectivamente goza de jurisdicción para considerar la consulta de ubicación del proyecto en controversia. No hallamos base alguna para la contención de las recurrentes, de que el ejercicio de dicha facultad está supeditado a la existencia de un Plan de Ensanche adoptado por el Municipio para los terrenos en cuestión. Al contrario, conforme al texto claro del Art. 13.012 de la Ley de Municipios Autónomos, la Junta goza de facultad para considerar proyectos “no incluidos en un Plan de Ordenación. ”
En la situación de autos, según hemos visto, la Junta determinó que el proyecto en cuestión no resultaba inconsistente con la clasificación brindada a los terrenos por el Plan Territorial del Municipio. La parte recurrente insiste en que la actuación de la Junta equivalió a una enmienda ilegal al Plan Territorial del Municipio de Ponce, sin haber seguido el procedimiento correspondiente, pero no juzgamos que el récord apoye dicha aseveración. Observamos, en este sentido, que el Municipio de Ponce compareció ante la Junta y expresó su anuencia al proyecto, sin levantar objeciones de que el desarrollo propuesto afectara en modo alguno sus planes de desarrollo o su Plan Territorial.
En estas circunstancias, no vemos base para intervenir con la decisión recurrida.
Las recurrentes también plantean que la actuación de la Junta resulta contraria a la Ley Núm. 49 de 4 de enero de 2003. Dicha ley, según indicado por la Junta, transfirió al Departamento de Recursos Naturales y Ambientales, el programa de Prevención de Inundaciones establecido mediante la Ley Núm. 6 de 29 de febrero de 1968, 12 L.P.R.A. secs. 255 y ss.
La exposición de motivos de la Ley Núm. 49 expresa que el propósito de dicho precepto es más bien aclarar la responsabilidad del Departamento de Recursos Naturales y Ambientales de brindar limpieza a playas y ríos, más no a los cauces de quebradas, los que son de dominio privado. La Asamblea Legislativa entendió que debía aclararse lo anterior a fin de “evitar pleitos frívolos contra el Estado por alegada negligencia por no llevar a cabo limpieza de cauces de quebradas y ríos. ” Véase, la exposición de motivos de la Ley Núm. 49.
A esos fines, el Artículo 1 de la Ley dispone, en lo pertinente:

“Se declara política pública del Gobierno de Puerto Rico preservar los ríos y quebradas como ecosistemas que proveen múltiples beneficios. El Departamento de Recursos Naturales y Ambientales podrá llevar a cabo obras de control de inundaciones y canalización de ríos siempre y cuando las obras sean necesarias para prevenir inundaciones en áreas que tienen un historial de inundaciones con daños a la vida y propiedad y cuya realización tenga un obvio fin e interés público, y que el costo de las mismas sea inferiores a la expropiación, reubicación o remoción de estructuras, de construcciones o de rellenos en zonas inundables. El Departamento deberá incluir en su análisis de costos los impactos ambientales directos, indirectos y acumulativos ocasionados por las obras y el costo de mitigación de tales impactos. Si se determina que el costo de una obra de conservación, limpieza, canalización o cualquier obra para prevención de inundaciones es superior a los costos de expropiación, reubicación o remoción de estructuras y mejoras construidas en zona inundable, el Departamento de Recursos Naturales y Ambientales utilizará las asignaciones de fondos legislativos o cualesquiera otros fondos para expropiar, reubicar o remover las estructuras en zonas inundables, excepto los rellenos, construcciones o mejoras substanciales a estructuras existentes realizadas en violación a la Ley Núm. 3 de 27 de septiembre de 1961, según enmendada, conocida como “Ley Para el Control de Edificaciones en Zonas Susceptibles a Inundaciones” en cuyo caso se actuará conforme a lo dispuesto en dicha Ley. ... Ningún funcionario público promoverá la edificación de estructuras en zonas inundables o interferirá con la reubicación de estructuras en zonas inundables. ... No se promoverá el desarrollo de obras de control de inundaciones para el rescate de terrenos privados ni se permitirá la canalización de ríos de Puerto Rico para viabilizar proyectos confínes y propósitos privados. ”

*614 Para propósito de esta Ley, se define limpieza como la remoción de materiales exógenos del cuerpo de agua que no son producto de procesos geológicos y que obstruyen el libre fluir de las aguas, y conservación se define como obras en los cauces de los ríos dirigidos a restaurar los bancos que están erodados, reducir o eliminar el proceso de erosión. Las obras de limpieza y conservación no podrán alterar la geometría ni el área seccional del cuerpo de agua, o interferir con el ciclo de transporte de sedimentos hacia la costa.
Se establece que el deber ministerial del Departamento es la vigilancia, conservación y limpieza de playas; y la conservación y limpieza de ríos sujeto a lo dispuesto en el párrafo anterior. El Departamento podrá llevar a cabo obras de conservación y limpieza de cauces de ríos cuando se determine que existe una situación que afecte intereses o fines públicos, y se afecta vida y propiedad o sistemas sensitivos, y se ha determinado que es la alternativa de acción más efectiva desde el punto de vista económico y ambiental que se hayan asignado fondos para ese propósito. El Departamento consultará a los municipios en cualquier determinación a tomarse. El Departamento no es responsable de la limpieza y conservación de quebradas y cauces de cuerpos de agua de dominio privado. No obstante, esta disposición no impedirá al Departamento llevar a cabo, en coordinación con municipios y personas privadas, obras de conservación y limpieza de quebradas o arroyos de acuerdo a un programa de trabajo sufragado por la Asamblea Legislativa o por municipios.
Se dispone que cualquier obra de limpieza y conservación en estos cuerpos de agua deberá ser aprobada por el Departamento y deberá incluir el análisis de costos y beneficios de los impactos ambientales directos, indirectos y acumulativos ocasionados por las obras y el costo de mitigación de tales impactos.
El Artículo 2 de la Ley dispone que cualquier obra de urbanización o cualquier lotificación colindante con un río, quebrada, laguna o cualquier cuerpo de agua, deberá asignar una faja de cinco metros lineales a ambos lados del cauce del cuerpo de agua, que se dedicará a uso público, para fines de conservación del cuerpo. En dicha faja sólo se permitirán usos recreativos pasivos que no conlleven obstrucción, no conflijan con funciones de conservación y limpieza y estén relacionados con el disfrute del cuerpo de agua.
El Artículo 3 de la Ley dispone que el Secretario del Departamento de Recursos Naturales y Ambientales ordenará la remoción de cualquier obra, construcción o mejora hecha sin autorización en el cauce de un cuerpo de agua.
La parte recurrente plantea que, toda vez que el citado Artículo 1 de la Ley se dispone que "[njingún funcionario público promoverá la edificación de estructuras en zonas inundables o interferirá con la reubicación de estructuras en zonas inundables”, la Junta de Planificación venía impedida de aprobar la consulta de ubicación de la recurrida, la cual contempla el desarrollo de terrenos ubicados en una Zona II del Mapa de Inundaciones.
La Junta de Planificación, según hemos visto, entendió que el lenguaje citado no modificaba las facultades concedidas a la Junta para considerar proyectos en áreas inundables. La construcción de estructuras en este tipo de áreas, según se conoce, está reglamentada en nuestra jurisdicción por la Ley Para el Control de Edificaciones en Zonas Susceptibles de Inundaciones, 23 L.P.R.A. secs. 225 y ss., la cual concede facultad a la Junta de Planificación para adoptar la reglamentación pertinente, 23 L.P.R.A. sec. 225f. Al amparo de dicha autorización, la Junta ha adoptado su Reglamento Núm. 13 “Sobre Control de Edificaciones y Desarrollo de Terrenos en Zonas Susceptibles a Inundaciones. ”
En la situación de autos, la consulta de ubicación de la recurrida fue evaluada bajo dicha Ley y Reglamento, autorizándose la misma, en vista de que los terrenos de la consulta sólo estaban afectados en parte por una Zona II en el Mapa Zonas Susceptibles a Inundaciones, lo que no constituía un impedimento a que fuesen desarrollados. La Junta estimó que la prueba pericial ofrecida por la parte recurrida demostraba de manera satisfactoria que el proyecto no habría de presentar problemas de inundaciones.
*615 Al llegar a dicha determinación, la Junta de Planificación observó que la Ley Núm. 49 no había derogado dichos preceptos. Interpretó, por lo tanto, que el lenguaje citado por la parte recurrente debía ser considerado dentro del contexto de la Ley Núm. 49 (i.e., relacionado al desarrollo de construcciones que afectaran la conservación y limpieza de los cauces de ríos y otros cuerpos de aguas) y no, como sugieren los recurrentes, como una prohibición absoluta a la autorización de consultas en cualquier terreno inundable en Puerto Rico.
Está claro que la Junta de Planificación es el organismo administrativo primariamente encargado de dirigir el desarrollo de los terrenos de nuestra jurisdicción. La interpretación de dicho cuerpo de la legislación existente en esta área es una que debe merecer deferencia por parte de este Tribunal. P.R.T.C. v. J. Reg. Tel. de P.R., 2000 J.T.S. 98, a las págs. 1,266-1267; Lab. Inst. Med. Ava. v. Lab. C. Borinquen, 149 D.P.R. _ (1999); 99 J.T.S. 141, a la pág. 41; Asoc. Médica de P.R. v. Cruz Azul, 118 D.P.R. 669, 678 (1987).
En el presente caso, la interpretación adoptada por la Junta nos parece enteramente razonable, por lo que no habremos de intervenir con la misma.
Las partes recurrentes alegan que la Junta erró aquilatar la prueba pericial desfilada en torno al problema de inundabilidad del predio objeto de la consulta y la efectividad de las medidas de mitigación propuestas. También se cuestiona la evaluación realizada sobre la viabilidad económica del proyecto, a la luz de alegada saturación existente en el área de mercado de la propuesta.
La norma en nuestra jurisdicción en cuanto a las determinaciones de hechos formuladas por una agencia administrativa es que los tribunales no deben intervenir con las mismas si están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Asoc. Vec. H. San Jorge v. U. Med. Corp., 2000 J.T.S. 21, a las págs. 560-61; Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 397-398 (1999); T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. a las págs. 80-81.
La evidencia sustancial para sostener la actuación administrativa es aquélla que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. Asoc. Vec. H. San Jorge v. U. Med. Corp., 2000 J.T.S. 21, a la pág. 561; Assoc. Ins. Agencies, Inc. v. Comisionado de Seguros de P.R., 144 D.P.R. 425, 437 (1997); Hilton Hotels International v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
En el presente caso, hemos examinado los documentos sometidos por las partes y somos de la opinión de que la decisión de la Junta efectivamente está sostenida por evidencia sustancial. Las determinaciones de la agencia, de que el proyecto no habrá de presentar un problema especial de inundaciones está respaldada por el informe del Dr. Morris según suplementado por la parte recurrida. La viabilidad económica del proyecto está respaldada por el estudio de mercado sometido por la firma Estudios Técnicos, Inc.
Reconocemos que la prueba pericial ofrecida por la parte recurrida sobre estos aspectos fue contradicha por los peritos presentados por las partes recurrentes, quienes atacaron los informes sometidos por los peritos de la recurrida y opinaron que el proyecto adolecía de un problema de inundabilidad y agravaría la posición económica de los otros comercios en el área. La Junta adjudicó estos conflictos a favor de la parte recurrida. Las partes recurrentes no nos han colocado en posición de sustituir la apreciación de la Junta sobre estos particulares.
Las recurrentes plantean, finalmente, que el aviso para la vista pública resultó defectuoso, porque el mismo hacía referencia a variaciones, cuando éstas no fueron solicitadas por la parte recurrida ni fueron discutidas por *616 la Junta.
Hemos examinado el aviso en cuestión que aparece en la página 527 del apéndice del recurso de las partes recurrentes en el caso KLRA-2003-00428. Entendemos que el aviso en cuestión notifica de manera adecuada de la fecha, sitio y naturaleza de la vista señalada, según lo requerido por Ley. 23 L.P.R.A. sec. 62z. El aviso describía con particularidad el proyecto propuesto, identificando detalladamente el predio en cuestión y describiendo la naturaleza de las obras contempladas. Se informaba a los interesados del lugar y hora de la vista, así como que los planos del proyecto estaban disponibles para ser examinados, indicando el lugar donde podían ser inspeccionados.
Los recurrentes, según hemos visto, alegan que la aprobación de la consulta equivalió a una enmienda al Plan de Ordenación Territorial del Municipio de Ponce, lo que resultaba ilegal, al no haberse notificado de lo anterior. Hemos rechazado, sin embargo, dicha interpretación. Entendemos que este error tampoco se cometió.
Por los fundamentos expresados, se deniega el auto solicitado.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2003 DTA 152
1. La resolución en cuestión indica que fue emitida los días 11 de marzo y 15 de mayo de 2003. Toda vez que la misma fue notificada a las partes en mayo de 2003, la designamos utilizando la segunda de las fechas indicadas.